UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOM JAMES COMPANY<br><br>   Plaintiff,<br><br>v.<br><br>LABEL, LLC,<br><br>   Defendant. | Civil Action<br><br>Case No.: 19-cv-6393<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tom James Company, by its attorneys, Faegre Baker Daniels LLP, and DeVore & DeMarco LLP, as and for its Complaint against the Defendant, Label, LLC, respectfully alleges as follows:

## PARTIES

1. Plaintiff Tom James Company ("Tom James" or the "Company") is a designer, producer, and distributor of premium, made-to-order menswear. Tom James is a Tennessee corporation doing business worldwide with its principal place of business in Franklin, Tennessee.

2. Defendant Label, LLC, ("Label") is a direct competitor of Tom James in the made-to-order menswear industry. On information and belief, the members of Label are Jeremy Miller and David Miller (the "Miller Brothers"). The Miller Brothers are both citizens of New York. Label's headquarters is located at 41 Madison Avenue, 31st Floor, New York, NY 10010.

## JURISDICTION AND VENUE

3. This action arises under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, as amended, and New York law. This Court has federal question jurisdiction pursuant to 28

1

U.S.C. § 1331.  This Court has supplemental or pendent jurisdiction over Tom James' remaining claims under 28 U.S.C. § 1367.

4. This Court also has original subject-matter jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the claims are between citizens of different states.

5. This Court has personal jurisdiction over Label because it conducts business in New York and its members are citizens of New York.  Upon information and belief, Label and its members have purposefully availed themselves of the benefits and protections of the State of New York by marketing, selling, and providing goods and services to residents in this district.

6. Venue is proper in this District under 28 U.S.C. § 1391.

## STATEMENT OF FACTS

7. Tom James has been making and delivering clothing since 1966 and is a leading maker and seller of custom and bespoke clothing.  Tom James sells its products worldwide, with over 100 offices in the United States and offices in Australia, Canada, Germany, the United Kingdom, and the Netherlands.

8. Tom James is committed to selling products which reflect each customer's individual style.  Tom James' clothiers, who act as sales personnel and wardrobe consultants, meet with each customer at the customer's home or office to understand what the customer does, who he or she interacts with, how the customer dresses, what clothing the customer already owns, and what needs to be updated.

9. Tom James' custom suits and dress shirts are made to order.  Tom James' clothiers take 31 unique measurements when a customer orders a suit and dress shirt.  Tom

James' clothiers take photographs of each customer to analyze his/her posture. Tom James also uses an incline device to see the slope of the customer's shoulders.

10. Once Tom James is finished crafting a garment, the clothier will deliver the garment to the customer for a final fitting.

11. Tom James has steadily built its business by persuading prospective clients to make private appointments, and by developing customer relationships and obtaining referrals from satisfied clients. Tom James relies heavily on repeat sales from customers who have previously purchased its products. Tom James' customer relationships therefore represent a substantial portion of the Company's goodwill.

12. To generate business, Tom James' clothiers frequently cold-call potential clients, and they receive substantial training to develop and improve their skills at achieving private appointments and making sales. Tom James devotes significant time and money to training its clothiers, and the loss of a successful clothier imposes a significant financial burden in training new clothiers to replace the lost employee.

13. Tom James' clothiers are responsible for collecting information concerning customers and potential customers, including each individual's name, age, contact information, profession, and employer. With respect to current and former customers, Tom James also collects information concerning each individual's measurements, clothing preferences, and order history.

14. The information collected by Tom James' clothiers is kept strictly confidential and is not to be disclosed to individuals outside of Tom James. While some clients may identify themselves as customers on social media, the numbers are de minimus when compared to the tens of thousands of clients that Tom James services.

15. Tom James maintains that all of its customer information, including, customer identity, measurements, clothing preferences, purchase histories and financial information is highly confidential and proprietary to Tom James.

16. Tom James' customer lists have been determined by this Court to constitute trade secrets under New York law. *See Locke v. Tom James Co.*, No. 11 Civ. 2961(GBD), 2013 WL 1340841, at *8 (S.D.N.Y. Mar. 25, 2013) (recognizing that Tom James has "a legitimate interest in protecting the compendium of customers which it secured with a considerable expenditure of [its] own time and resources").

**Tom James' Efforts to Protect Its Trade Secrets**

17. Tom James requires each of its clothiers to execute an Employment Agreement.

18. Each of Tom James' Employment Agreements with its clothiers contain non-disclosure, non-competition, and non-solicitation covenants which are essential to the protection of Tom James' trade secrets and confidential information.

19. Pursuant to the Employment Agreement, each Tom James clothier agrees not to provide or solicit services to Tom James' customers other than exclusively on behalf of Tom James for either 18 months or two years after their employment ends.

20. Tom James clothiers also agree not to entice, advise, or solicit Tom James' customers to terminate or otherwise alter, to Tom James' detriment, their relations with Tom James.

21. Tom James' clothiers are also prohibited from disclosing certain confidential information (the "Confidential Information"), which includes, without limitation, current and future business plans, internal unpublished financial reports, and marketing and pricing strategies; manuals, aids, and materials relative to special direct selling techniques and customer

4

service; costs of manufacturing, costs of goods sold, and profit margins; future product roll-outs not yet publicly announced; active systems, computerized information and databases; the personnel and medical data, legal strategies, investments and compensation plans relative to Tom James, its owners, directors, officers, employees, agents and representatives; and the compendium or compilation of particularized client information developed, used and maintained by Tom James and its employees which includes, without limitation, each individual's name, contact information, profession, employer, measurements, clothing preferences, and order history.

22. In addition to clothiers, each Tom James employee who may come into contact with Confidential Information is required to review Tom James' Office Support Manual and certify that he or she understands Tom James' policies and procedures.

23. The Office Support Manual contains a Confidentiality Policy, which informs employees of their obligation to not disclose Tom James's Confidential Information. The Confidentiality Policy also notifies each employee that Tom James may commence legal action to stop or remedy violations of the Confidentiality Policy.

24. For additional security, Tom James' customer lists and other Confidential Information maintained on Tom James' network are password protected.

**Label Also Considers Its Customer Lists, Customer Information, And Pricing Information To Constitute Trade Secrets Under New York Law**

25. Defendant Label, founded in 2013 by the Miller Brothers, is a direct competitor to Tom James in the made-to-order menswear industry.

26. Label primarily operates out of New York City, and has showrooms in New York City, Charlotte, North Carolina, and Miami, Florida. Label, like Tom James, offers customers the option to meet with its clothiers at the customers' office or home.

27. Upon information and belief, Label conducts business in cities around the country including, but not limited to: New York City, New York; Miami, Florida; Charlotte, North Carolina; San Francisco; California; Los Angeles, California; Chicago, Illinois; Atlanta, Georgia; Boston, Massachusetts; Dallas, Texas; Philadelphia, Pennsylvania; and Washington, D.C.  Tom James conduct business in each of those locations as well.

28. Label has previously taken the position that the sort of confidential customer information at issue here constitutes trade secrets under New York law.

29. Label is currently involved in litigation with a former employee in federal court in the Southern District of New York.  *See Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB.

30. In that case, a former Label employee brought several claims against Label and the Miller Brothers, including false advertising, defamation, tortious interference with business relations, and trade libel.  *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 1.

31. Label counterclaimed against the plaintiff, alleging unfair competition, breach of fiduciary duty, misappropriation of trade secrets, tortious interference with contractual relations, tortious interference with prospective economic advantage, violation of the Lanham Act, and breach of the covenant of good faith and fair dealing.  *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 37.

32. Label alleges that its documents detailing confidential customer, supplier, and pricing information constitute trade secrets.  *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 37, ¶ 83.  Specifically, Label acknowledges that "[c]lientele interested in high-end bespoke clothing are not publicly known and Label's list of customers . . . was compiled after substantial work.  That list cannot be readily recreated or ascertained from other sources."  *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 72, p. 11.  Beyond just the identity

of its customers, Label recognizes the importance of maintaining the confidentiality of other information as well, including "private contact information for each client, as well as detailed data regarding the client's height, weight and age; build, posture, and fit preferences, whether they wear a watch and on which hand; and up to 30 discrete body measurements to ensure a proper fit." *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 72, p. 11.

33.  Label acknowledges that keeping customer and pricing information secret is essential to viability in the custom and bespoke clothing business.  Label believes this information "is not only the intellectual property of [Label], but its primary asset.  It allows Label to ensure continuity of service for its repeat customers and price its products competitively." *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 72, p. 11.  Label alleges that as a result of the former employee's misappropriation of trade secrets, Label has lost clients, lost profits, and suffered reputational harm.  *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 37, ¶ 86.

**Label Also Recognizes The Threat Posed By Tortious Interference With Employment Contracts**

34.  In *Schwartzman v. Label, LLC*, Label alleges that a former employee "sought to poach Label's employees to join him at [a competitor] and . . . induce them to bring Label's confidential, proprietary, and trade secret information along as well." *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 72, p. 14.

35.  Label requires its salespeople to execute non-competitive agreements that prohibit them "from soliciting or servicing Label's clients for 18 months upon . . . separation from Label." *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 72, p. 14.  Label also requires its salespeople to "maintain the confidentiality of Label's proprietary information." *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 72, p. 14.

36. As a result of the former employee's alleged poaching of multiple Label salespeople, Label sued the former employee for tortious interference with contract as well as tortious interference with prospective economic advantage. *Schwartzman v. Label, LLC*, No. 15-cv-05793-VSB, Dkt. No. 37, ¶¶ 87-95.

**Label Flagrantly Interferes with Tom James' Employment Contracts and Poaches Tom James' Clothiers**

37. Notwithstanding Label seeking protection—from this Court—of its own customer lists and employees from poaching, Label has flagrantly interfered with Tom James' employment contracts, poached Tom James' clothiers, and misappropriated Tom James' Confidential Information.

38. In 2015, Label successfully poached Christopher Andrew Cochran ("Cochran"), a Tom James clothier, to leave Tom James and become one of the founding members of Label Southeast, LLC, in North Carolina. Cochran's final day as a Tom James employee was July 28, 2015.

39. As a Tom James employee, Cochran was bound by the terms of his Employment Agreement, which contained non-competition and non-solicitation covenants as well as restrictions concerning the disclosure and use of Confidential Information.

40. Tom James learned that Cochran violated the terms of his Employment Agreement. On or about December 21, 2015, Tom James sent the Miller Brothers a letter informing them that Cochran was in violation of his Employment Agreement and requesting that Label not aid or abet Cochran in his wrongful interference with Tom James' customer relationships or unauthorized use and disclosure of Confidential Information.

41. Tom James also informed Label that it should not "entice members of Tom James' sales force to divert their loyalty and duties owing to Tom James."

42. The Miller Brothers responded to this letter and asserted that Cochran would comply with his obligations under his Employment Agreement.

43. Since at least December 21, 2015, Label has been aware of the fact that each Tom James clothier executes an Employment Agreement which defines Tom James' customer information and customer lists as Confidential Information and also contains non-competition and non-solicitation covenants.

44. Despite this knowledge, Label has continued its efforts to entice Tom James' clothiers to leave Tom James and join Label.

45. Label frequently contacts Tom James' clothiers through LinkedIn for the purpose of enticing them to join Label.

46. In some of its communications with Tom James' clothiers, Label states that "some of [its] competitors try to impose aggressive scare tactics (non-competes, etc.) to deter [employees from] pursuing other opportunities in the industry." Label suggests that these non-competes are not enforceable, writing that "[t]hese are simply that—scare tactics." Label also tells Tom James' clothiers that if they join Label, Label will provide them with "indemnity protection, mitigating [the clothier's] risk down to zero liability."

47. On information and belief, Jeremy Miller, Label's CEO, has reached out to numerous Tom James clothiers through LinkedIn in an attempt to entice them to join Label.

48. Jeremy Miller recently told a Tom James clothier that Label "run[s] a sales program, just like Tom James. Most of [Label's] sales force is x [sic] chairman's club tom james[.]" Miller also asserted that Label "give[s] more assistance, and [has] a better platform for success." When the Tom James clothier indicated her intent to remain with Tom James, Miller

stated, "Good luck. If anything changes and you want to explore what TJ 2.0 looks like, feel free to reach out."

49. In addition to Cochran, Label has poached at least five other Tom James clothiers.

50. Scott Kappmeier ("Kappmeier") was a Tom James employee from August 2008 through April 31, 2014. Kappmeier worked out of Tom James' New York City office. On information and belief, Kappmeier began working on behalf of Label in February 2014, while he was still employed by Tom James. Kappmeier is currently employed as a Senior Vice President of Sales at Label.

51. John DiGiovanni ("DiGiovanni") was a Tom James clothier from January 2012 through February 2015. DiGiovanni worked out of Tom James' New York City office. DiGiovanni joined Label in February 2015. DiGiovanni is currently employed as a Senior Vice President at Label.

52. Jennah Goldman ("Goldman") was a Tom James clothier from July 2010 through November 2014. Goldman worked out of Tom James' Miami, Florida and Sydney, Australia offices. Goldman joined Label in March 2016. Goldman is currently employed as a Vice President of Sales at Label.

53. Whitney Utz ("Utz") was a Tom James clothier from June 2005 until December 7, 2018. Utz worked out of Tom James' New York City office. Utz joined Label in December 2018. Utz is currently employed as both a Director of Client Relations and Regional Head of Womenswear at Label.

54. Christine Lessen ("Lessen") was a Tom James clothier from August 2013 through May 14, 2019. Lessen worked out of Tom James' Sacramento, California office. Lessen joined Label in May 2019. Lessen is currently employed as a Director of Client Relations for Label.

55. These six former Tom James clothiers were responsible for several hundred thousand dollars of annual sales while working for Tom James.

56. Upon information and belief, Label enticed each of the above-listed former Tom James clothiers to join Label and compete with Tom James while they were still employees of Tom James.

57. Upon information and belief, Label was aware that each of the above-listed former Tom James clothiers executed Employment Agreements containing non-competition and non-solicitation covenants, as well as restrictions concerning the disclosure and use of Tom James' Confidential Information.

**Label Misappropriates Tom James' Confidential Information**

58. Lessen worked as a Tom James clothier until May 14, 2019. On May 6, 2019, while she was still collecting a salary from Tom James, she reached out to a Tom James customer for whom she had previously completed sales. Lessen "apologized for the delay in getting back to [him]" and informed him that she was "still in the custom clothing industry and would be happy to help [him] with any clothing needs." Lessen asserted that she was now a "Director of Client Relations" for Label and asked to "schedule a time to meet and pick up where we left off."

59. Upon information and belief, Lessen has disclosed Tom James' Confidential Information to other personnel at Label.

60. Upon information and belief, Cochran, DiGiovanni, Goldman, Kappmeier, and Utz also solicited Tom James clients to become Label customers after each former clothier left Tom James.

61. Upon information and belief, Label encourages its former Tom James clothiers to solicit their former clients from Tom James and to use their former clients as a basis for referrals of new potential clients.

62. Tom James' efforts to stop Label from misappropriating its Confidential Information have so far been unsuccessful.  Most recently, Tom James sent Utz a letter on or about February 18, 2019, reminding her of the non-solicitation and non-competition covenants in her Employment Agreement.  That same day, Tom James also sent a letter to the Miller Brothers demanding that Label cease its misappropriation of Tom James' Confidential Information.  Tom James received no response to either letter.

63. Upon information and belief, Tom James has lost profits in excess of $300,000 as a result of Label's misappropriation of Tom James' Confidential Information.

## CLAIMS FOR RELIEF

### COUNT I – VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836)

64. Tom James realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs as though fully set forth herein.

65. Tom James's Confidential Information is not generally known in the industry or elsewhere and is not readily ascertainable by proper means by other persons.

66. Tom James' Confidential Information derives actual and potential independent economic value from not being generally known to, or readily ascertainable by proper means by, other persons who might obtain economic value from its disclosure or use.

67. Tom James has taken efforts, reasonable under the circumstances, to protect the confidentiality of material information relating to its Confidential Information.

68. Tom James' Confidential Information constitutes trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*.

69. Tom James' Confidential Information includes, but is not limited to, current and future business plans, internal unpublished financial reports, and marketing and pricing strategies; manuals, aids, and materials relative to special direct selling techniques and customer service; costs of manufacturing, costs of goods sold, and profit margins; future product roll-outs not yet publicly announced; active systems, computerized information and databases; the personnel and medical data, legal strategies, investments and compensation plans relative to Tom James, its owners, directors, officers, employees, agents and representatives; and the compendium or compilation of particularized client information developed, used and maintained by Tom James and its employees which includes, without limitation, each individual's name, contact information, profession, employer, measurements, clothing preferences, and order history.

70. Tom James' Confidential Information relates to products and services used in, and/or intended for use in, interstate commerce.

71. By virtue of their employment with Tom James, Cochran, DiGiovanni, Goldman, Kappmeier, Lessen, and Utz (the "Poached Employees") were in possession of Tom James' Confidential Information and subject to confidentiality and non-competitive agreements in which they (1) expressly acknowledged and confirmed the confidential nature of the Confidential Information; (2) agreed to maintain the confidentiality of the Confidential Information; and (3) agreed not to use Tom James' Confidential Information to compete with Tom James.

72. The Poached Employees knowingly and improperly used and disclosed Tom James' Confidential Information in violation of their duties, including but not limited to those provided in their Employment Agreements.

73. Label misappropriated Tom James' Confidential Information by knowingly acquiring the trade secrets through improper means, namely, by inducing the Poached Employees to breach their duty to maintain the secrecy and confidentiality of the Confidential Information.

74. Label's acquisition of Tom James' Confidential Information constitutes misappropriation because at the time of such use and disclosure, Label knew or had reason to know that Label's knowledge of the Confidential Information was derived from or through persons (*i.e.*, the Poached Employees) who owed a duty to Tom James to maintain the secrecy, and limit the use of, the Confidential Information.

75. Label's misappropriation comprises acts, including without limitation the use of Tom James' Confidential Information, on or after the date of the enactment of the Defend Trade Secrets Act.

76. Label's current and continued misappropriation of Tom James' Confidential Information is reckless and malicious. Label knows of the confidentiality, ownership, and use restrictions on Tom James' Confidential Information, which the Poached Employees agreed to abide by in signing their Employment Agreements.

77. Label's misappropriation of Tom James' Confidential Information has caused damage to Tom James in excess of $300,000, the specific amount of which shall be determined at trial.

## COUNT II – MISAPPROPRIATION OF TRADE SECRETS (New York Law)

78. Tom James realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs as though fully set forth herein.

79. Tom James's Confidential Information is not generally known in the industry or elsewhere and is not readily ascertainable by proper means by other persons.

80. Tom James' Confidential Information derives actual and potential independent economic value from not being generally known to, or readily ascertainable by proper means by, other persons who might obtain economic value from its disclosure or use.

81. Tom James has taken efforts, reasonable under the circumstances, to protect the confidentiality of material information relating to its Confidential Information.

82. Tom James' Confidential Information constitutes trade secrets under New York law.

83. By virtue of their employment with Tom James, the Poached Employees had access to and acquired the Confidential Information belonging to Tom James under circumstances giving rise to a duty to Tom James to maintain the secrecy of this information and limit its use for the benefit of only Tom James.

84. The Poached Employees accessed, used and/or disclosed, and continue to access, use, and/or disclose, such information without the express or implied consent of Tom James, for the benefit of Label.

85. Label discovered Tom James' Confidential Information by improper means, through the knowing violation of Tom James' Employment Agreements and by encouraging the violation of these Employment Agreements.

86. Label used and/or continues to use Tom James' Confidential Information, without the express or implied consent of Tom James, for its own benefit and to compete directly against Tom James. The Confidential Information owned by Tom James and misappropriated by Label for its own benefit constitutes misappropriation of trade secrets.

87. Label's misappropriation of Tom James' Confidential Information has caused damage to Tom James in excess of $300,000, the specific amount of which shall be determined at trial.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT (New York Law)

88. Tom James realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs as though fully set forth herein.

89. Tom James had valid contracts with each of the Poached Employees.

90. At the time it engaged in discussions with the Poached Employees to move from Tom James to Label, Label was aware of the Poached Employees' contractual obligations to Tom James, including their agreements not to compete with Tom James, solicit Tom James' customers, or use or disclose Tom James' Confidential Information.

91. Nevertheless, Label intentionally caused the Poached Employees to breach their contractual agreements without justification.

92. By these actions, Label has caused damage to Tom James in excess of $300,000, the specific amount of which shall be determined at trial.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS (New York Law)

93. Tom James realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs as though fully set forth herein.

94. Tom James has and/or had relationships with customers that were facilitated by the Poached Employees in their capacity as clothiers for Tom James.

95. Label knew of and intentionally interfered with these business relationships.

96. Label did so for a wrongful purpose, or used dishonest, unfair, or improper means to interfere with Tom James' business relationships with these customers.

97. Label's acts of interference caused injury to the business relationships between Tom James and its customers.

98. By these actions, Label has caused damage to Tom James in excess of $300,000, the specific amount of which shall be determined at trial.

### COUNT V – UNFAIR COMPETITION (New York Law)

99. Tom James realleges and incorporates by reference herein the allegations contained in the foregoing paragraphs as though fully set forth herein.

100. Tom James' clothiers know the identities of and work closely with Tom James' customers and, as a result, have a detailed understanding of customer-specific preferences. On information and belief, Label has undertaken efforts to recruit and hire Tom James' clothiers to take advantage of their relationships with and particularized knowledge about Tom James' customers in order to unfairly compete with Tom James in the premium, made-to-order menswear industry.

101. On information and belief, Label intends to harm Tom James by recruiting and hiring Tom James' employees to work in substantially similar roles in its competitive business and by soliciting the use or disclosure of Tom James' Confidential Information.

102. Label's actions constitute unfair competition, including improper and unlawful employee raiding or employee poaching, as well as misappropriation of trade secrets.

103. On information and belief, a primary purpose of Label's recruitment and hiring of Tom James' clothiers is to give Label an unfair advantage in selling its products.

104. Label's actions constitute unfair competitive practices as, on information and belief, it has already used, or will use, its knowledge of Tom James' Confidential Information to unlawfully solicit and/or poach Tom James' customers.

105. Label's actions were and/or are taken in bad faith to misappropriate Tom James' commercial advantage.

106. As a direct and proximate cause of Label's unfair competitive practices, including employee raiding and misappropriation of Tom James' Confidential Information, Label has caused damage to Tom James in excess of $300,000, the specific amount of which shall be determined at trial.

**WHEREFORE**, Plaintiff, Tom James Company, demands judgment and asks that the Court:

1. Award Tom James Company damages for the tortious conduct described herein;

2. Enter judgment against Defendant Label, LLC for all damages proximately caused by its wrongful actions, for all amounts by which it may have been unjustly enriched, and treble damages;

3. Enter a declaratory judgment recognizing that the items of information comprising Tom James' Confidential Information are protectable trade secrets;

4. Enter a permanent injunction prohibiting Label (and its respective officers, agents, employees) from: (1) soliciting either Tom James Company's employees or customers in violation of Tom James Company's Employment Agreements; and (2) disclosing or otherwise using Tom James Company's Confidential Information;

5. Award Tom James Company its costs, disbursements, and attorneys' fees;

6. Award Tom James Company pre- and post-judgment interest; and

7. Order all other relief that the Court deems proper and just.

**DEVORE & DEMARCO LLP**

Dated:  July 10, 2019

/s/ David M. Hirschberg
**David M. Hirschberg, SDNY Atty #DH2718**
*dmh@devoredemarco.com*
**Joseph V. DeMarco, SDNY Atty #JD3499**
 *jvd@devoredemarco.com*
99 Park Avenue, Suite 1100
New York, New York 10016
(212) 922-9499

*Attorney for Plaintiff Tom James Company*

**FAEGRE BAKER DANIELS LLP**

Dated:  July 10, 2019

/s/ James. P. Philbin
**James P. Philbin, SDNY Atty #JP7472**
 *James.Philbin@FaegreBD.com*
1050 K Street NW
Suite 400
Washington, D.C. 20001
(202) 312-7400

**George A. Stohner, NY Atty #2439115**
**[*Pro Hac Vice* Pending]**
 *George.Stohner@FaegreBD.com*
11766 Wilshire Boulevard
Suite 750
Los Angeles, CA 90025
(310) 500 2090

*Attorneys for Plaintiff Tom James Company*

US.108062433